**Brian D. Chenoweth, OSB #94499**
E-mail: brianc@northwestlaw.com
**Brooks M. Foster, OSB #04287**
E-mail: brooks@northwestlaw.com
Chenoweth Law Group, PC
601 SW Second Avenue, Suite 1940
Portland, OR 97204-3176
Telephone: (503) 221-7958
Facsimile: (503) 221-2182

    Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROBERT GRAY PARTNERS, INC.,** | Case No: 3:06-CV-1386-KI |
| **Plaintiff,** | |
| v. | **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **CONTINENTAL WESTERN INSURANCE COMPANY,** | By Plaintiff Robert Gray Partners, Inc. |
| **Defendant.** | **Request for Oral Argument** |

Plaintiff Robert Gray Partners, Inc. ("Robert Gray") presents the following *Response in Opposition to Defendant's Motion for Summary Judgment*. For the Court's convenience, copies of unpublished court opinions cited in Plaintiff's Memorandum are included in an attached Appendix. This Response is supported by: (1) the attached *Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment*; (2) Exhibits A, C, D, E, and H submitted by Continental Western Insurance Company ("Continental Western") in support of *Defendant's Motion for Summary Judgment*; (3) the previously filed Declaration of Hugh

Telleria in Support of Plaintiff's Motion for Partial Summary Judgment ("Tell. Dec.); (4) the previously filed *Declaration of Brian D. Chenoweth in Support of Plaintiff's Motion for Partial Summary Judgment* ("Chen. Supp. Dec.") with attached Exhibit 12; (5) the attached *Declaration of Brian D. Chenoweth in Opposition to Defendant's Motion for Summary Judgment* ("Chen. Opp. Dec."); and (6) the attached portions of the *Deposition of Steven W. Needs* ("Needs Dep.") with attached Exhibits 102, 105, 107, 112, 114–16, 118–20, and 124;[1] and (6) the pleadings and record on file with the Court.

---

[1]  The numbers assigned to exhibits introduced through the deposition of Steve Needs have been increased by 100 for the purposes of this summary judgment proceeding.  This will prevent the numbers assigned to those exhibits from overlapping with the numbers assigned to other exhibits introduced by Robert Gray in this proceeding.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iv

     STATUTES ........................................................................................................ iv

     NINTH CIRCUIT LOCAL CIVIL RULES ........................................................ v

     FEDERAL CASES ............................................................................................. v

     STATE CASES .................................................................................................. v

I.      INTRODUCTION ...................................................................................... 1

II.    RESPONSE TO CONTINENTAL WESTERN'S "SUMMARY OF UNDISPUTED FACTS" ................................................................................ 2

     A.    After Robert Gray Tendered the Claim on May 8, 2006 It Received No Response from Continental Western Until June 14, 2006; Even Then Continental Western Still Had Not Made a Clear Coverage Determination on Its Duty to Defend. ........ 2

     B.    Continental Western Failed to Answer Robert Gray's Reasonable Questions About the Terms of the Proffered Defense and Its Reservation of Rights. .............. 3

     C.    Continental Western Requested Information That Could Have No Bearing On Its Duty to Defend, Then Failed to Act Reasonably and Diligently to Obtain the Information, Apparently Thinking Its Appointed Defense Counsel Should Have Been Working for It on Coverage Issues. ............................................................ 4

     D.    Continental Western Agrees That Reasonable and Necessary Post-Tender Defense Costs Should Be Covered, But Never Reviewed the Defense Cost Invoices Submitted by Robert Gray to Determine Whether Any of the Costs Were Properly Payable. ............................................................... 5

     E.    Continental Western Clarified It Was Reserving the Right to Reimbursement, Then Agreed to Waive That Right, But Still Failed and Refused to Pay Robert Gray's Post-Tender Defense Costs Incurred to CLG and Pinnell Busch. ............... 6

III.   RESPONSE ARGUMENT ............................................................................... 7

     A.    The Court Should Draw All Factual Inferences in Favor of Robert Gray, Then Deny Continental Western's Motion If It Raises Any Triable Question of Material Fact That Cannot Be Decided as a Matter of Law. ................................................. 7

     B.    In the Very Least, Continental Western's Motion Raises Questions of Fact That Preclude Summary Judgment. ................................................................ 8

C.      As a Matter of Law, Continental Western Had a Duty to Defend Robert Gray
        Against the Newberg Arbitration. ............................................................................9

D.      As a Matter of Law, Continental Western's Duty to Defend Began on the Date of
        Tender, May 8, 2006. .............................................................................................10

E.      Continental Western's Motion Should Be Denied Because It Is Indisputably in
        Breach of the Insurance Contract for Failing and Refusing to Pay Robert Gray's
        Reasonable Defense Costs Incurred During the Waiting Period Between Tender
        of the Claim and Receipt of Continental Western's First Response Letter on June
        14, 2006. ................................................................................................................11

F.      Continental Western's Motion Should Be Denied for the Additional Reason That
        Its Failure and Refusal to Pay Robert Gray's Reasonable Defense Costs Incurred
        to CLG and Pinnell Busch after June 14, 2006 Constitutes Further Breach of Its
        Duty to Defend. .....................................................................................................13

        1.      Robert Gray's Decision Not to Communicate with Smith Freed
                Regarding Its Defense Prior to October 6, 2007 Was Not Prejudicial to the
                Defense. .....................................................................................................14

        2.      Robert Gray Acted Reasonably Under the Circumstances. ......................14

        3.      Robert Gray's Refusal to Communicate with Smith Freed Regarding its
                Defense Prior to October 6, 2007 Cannot Excuse Continental Western's
                Breach Because Continental Western Did Not Act with Good Faith and
                Due Diligence in Dealing with Robert Gray and Attempting to Take
                Control of the Defense. ...............................................................................18

G.      The Court Should Reject as Premature Continental Western's Motion to Dismiss
        Robert Gray's Claims for Attorney Fees Under ORS 742.061 and Prejudgment
        Interest Under ORS 82.010. ..................................................................................22

IV.     CONCLUSION ...............................................................................................................22

## TABLE OF AUTHORITIES

### STATUTES

Or. Rev. Stat. § 82.010 ...........................................................................................................22

Or. Rev. Stat. § 742.061 .........................................................................................................22

### NINTH CIRCUIT LOCAL CIVIL RULES

Local Rule 36–3 .....................................................................................................................21

Page iv -  **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
          By Plaintiff Robert Gray Partners, Inc.

**FEDERAL CASES**

*Allstate Ins. Co. v. Fulmer*, 2004 U.S. Dist. LEXIS 24421 (D. Or. 2004)....................................9

*Am. Motorist Ins. Co. v. Custom Rubber Extrusions, Inc.*, 2006 U.S. Dist. LEXIS 59436 (N.D. Ohio 2006)..........................................................................................................................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................8

*Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992)..............................7, 8

*Employers Mut. Cas. Co. v. Indus. Rubber Prods., Inc.*, 2006 U.S. Dist. LEXIS 9242 (D. Minn. 2006) ......................................................................................................................................16

*Fireman's Fund Ins. Co. v. Ed Niemi Oil Co.* ("*Niemi*"), 2005 U.S. Dist. LEXIS 29467 (D. Or. 2005) ...................................................................................................................................9, 10

*Knapp v. Commonwealth Land Title Ins. Co.*, 932 F.Supp. 1169 (D. Minn. 1996) ....................17

*St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 377 F.Supp.2d 719 (D. Minn. 2005) ..................................................................................................................................16, 17

*Two Bears Co. v. American State Insurance Co.*, 1999 U.S. App. LEXIS 10912 (9th Cir. 1999) ...........................................................................................................................21

*Wausau Bus. Ins. Co. v. Puget Plastics Corp.*, 2006 U.S. Dist. LEXIS 45014 (D. Or. 2006)......11

**STATE CASES**

*Abrams v. Gen. Star Indem. Co.*, 67 P.2d 931 (Or. 2003)............................................................9

*Bailey v. Universal Underwriters Ins. Co.*, 474 P.2d 746 (Or. 1970)............................. 13, 14, 18

*Buss v. Superior Court*, 939 P.2d 766 (Cal. 1997) ....................................................................17

*Farmers Ins. Co. of Or. v. Munson*, 873 P.2d 370 (Or. App. 1994)............................................13

*Ferguson v. Birmingham Fire Ins. Co.*, 460 P.2d 342 (Or. 1969)........................................15, 16

*Fulton v. Woodford*, 545 P.2d 979 (Ariz. App. 1976) ................................................................17

*Gebrayel v. Transamerica Title Ins. Co.*, 888 P.2d 83 (Or. App. 1995).....................................15

*Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092 (Ill. 2005).........16

*Georgetown Realty, Inc. v. Home Ins. Co.*, 831 P.2d 7 (Or. 1992) .............................................21

*Gordon v. Nationwide Mut. Ins. Co.*, 285 N.E.2d 849 (N.Y. 1972) ............................................12

*Grant v. Transit Casualty Co.*, 693 P.2d 1328 (Or. App. 1985).................................................1, 18

*Johnson v. Doughty*, 385 P.2d 760 (Or. 1963) ....................................................................14, 18

*La Rotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 936 (Ill. App. 1980) ..............................12

*Ledford v. Gutoski*, 877 P.2d 80 (Or. 1994) ............................................................................11

*Lusch v. Aetna Cas. & Surety Co.*, 538 P.2d 902 (Or. 1975) ....................................................13

*Maine Bonding & Cas. Co. v. Centennial Ins. Co.*, 693 P.2d 1296 (Or. 1985) ..........................15

*McKee v. Allstate Ins. Co.*, 426 P.2d 456 (Or. 1967)..................................................................9

*Oak Crest Construction Co. v. Austin Mutual Insurance Co.*, 998 P.2d 1254 (Or. 2000)...........10

*Oregon Ins. Guar. Assoc. v. Thompson* ("*Thompson*"), 760 P.2d 890 (Or. App. 1988) .............11

*Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London*, 104 P.3d 1162, 1169 (Or. App. 2005)................................................................................................................................9

*United Pac. Ins. v. Pac. Nw. Research Found.*, 593 P.2d 1278 (Or. App. 1979)..................14, 15

# I.  INTRODUCTION

Continental Western contends that as a matter of law it did not breach the insurance contract because Robert Gray "thwarted" Continental Western's efforts to comply with the contract by performing its duty to defend and "imposed improper conditions on the defense." Continental Western's "thwarting" argument is a defense based on Robert Gray's alleged failure to cooperate, which is a question of fact.  *See, e.g.*, *Grant v. Transit Casualty Co.*, 693 P.2d 1328, 1329–30 (Or. App. 1985).

Moreover, Continental Western did not offer a defense until June 14, 2006, 37 days after the May 8, 2006 tender.  During that waiting period, Robert Gray had no reasonable choice but to defend itself.  Continental Western has denied coverage for any of these post-tender defense costs, but now seeks summary judgment on the grounds that it never denied coverage. Continental Western's motion for summary judgment fails on this ground alone.

In addition, Continental Western's motion raises significant factual issues about: (1) whether Continental Western breached the insurance contract by failing and refusing to pay reasonable defense costs incurred by Robert Gray *after* receipt of the first response letter from Continental Western on June 14, 2006; (2) whether Robert Gray's reluctance to speak with Continental Western's appointed defense counsel caused any prejudice to the defense; (3) whether Robert Gray's reluctance to speak with Continental Western's appointed defense counsel was reasonable under the circumstances; and (4) whether Continental Western failed to act diligently and in good faith in seeking Robert Gray's cooperation and attempting to take control of the defense.  Continental Western's motion does not even attempt to address these issues, providing additional grounds to deny the motion.

///

///

///

## II. RESPONSE TO CONTINENTAL WESTERN'S

## "SUMMARY OF UNDISPUTED FACTS"

**A.**    **After Robert Gray Tendered the Claim on May 8, 2006 It Received No Response from Continental Western Until June 14, 2006; Even Then Continental Western Still Had Not Made a Clear Coverage Determination on Its Duty to Defend.**

Robert Gray tendered the arbitration claim filed by Newberg School District ("Newberg") to Continental Western on May 8, 2006. Ex. C. Up until that time, there had been little activity in the underlying case and Robert Gray had been hoping the case would be resolved quickly without involving its insurance carrier. Chen. Opp. Dec. ¶ 3.

Continental Western created the claim file on May 9, 2006. Needs Dep. at 33:4–8. According to the notes dated May 12, 2006 by Steve Needs (Continental Western's adjuster on the claim) the date of loss appeared to fall within Robert Gray's policy periods. Needs Dep. at 38:5–10; Ex. 107 at 5. On or about May 30, 2006 Continental Western sent a letter to Jack Levy of Smith Freed & Eberhard, PC ("Smith Freed") directing him to take the deposition of Robert Gray in order to "find out additional information regarding what happened." Ex. D at 2; Needs Dep. at 26:2–4. That same day, Mr. Levy contacted Robert Gray's attorneys at CLG to announce his intent to defend Robert Gray. Ex. 105 at 2. On May 31, 2006 Continental Western received an email from CLG attorney Brian Chenoweth explaining that Robert Gray had received no reservation of rights letter and "need[ed] to understand the carrier's position" before he could set up a meeting with Levy. *Id.* at 1. Continental Western admits Mr. Chenoweth's request for a reservation of rights letter and an explanation of Continental Western's coverage position was reasonable. Needs Dep. at 29:18–30:20.

On June 9, 2006 Needs sent a reservation of rights letter directly to Robert Gray without copying its attorneys, even though he knew Robert Gray was represented. Needs Dep. at 40:22–41:10; Tell. Dec. ¶ 7. Robert Gray received the letter on June 14, 2006. *Id.* Due to Continental

Western's error, CLG first received the letter no earlier than June 20, 2006. Chen. Opp. Dec. ¶ 4. The letter states Continental Western was "investigating this matter under a full reservation of rights" and reserved "the right to decline any future defense and/or indemnity payments under your policy for the allegations presented." Ex. C at 5. Thus, Continental Western made it clear that Robert Gray might have to pay all of its own defense costs, even to an appointed defense attorney not chosen by Robert Gray. The letter also reserved Continental Western's "right to amend or to supplement" the letter. *Id.* at 6. The letter invited Robert Gray to respond "immediately" if it had "any questions" regarding the letter. *Id.*

In a letter dated June 14, 2006, Continental Western informed Robert Gray it was "investigating this claim under a full Reservation Of Rights letter[.]" Needs Dep. at 45:10–21, Ex. 112. As of June 14, 2006 Continental Western admittedly still "hadn't made a clear determination on the duty to defend[.]" Needs Dep. at 48:4–7.

**B.** **Continental Western Failed to Answer Robert Gray's Reasonable Questions About the Terms of the Proferred Defense and Its Reservation of Rights.**

On June 21, 2006 Mr. Chenoweth asked Continental Western to answer in writing five questions regarding its coverage position. Ex. 114 at 2. "Time is of the essence," added Mr. Chenoweth, "as work is continuing on the case." *Id.* On June 23, 2006 Mr. Chenoweth told Continental Western that Robert Gray was "willing an[d] able to cooperate" as soon as his questions were answered. *Id.* at 1. On June 27, 2006, Mr. Chenoweth again requested a response to his questions and reminded Continental Western "there are many things to do to defend against this suit." Ex. 115 at 1.

Continental Western did not answer Mr. Chenoweth's questions. Chen. Opp. Dec. ¶ 5. In deposition, Needs testified that Continental Western's position at the time was that: (1) Continental Western had accepted the duty to defend based on the allegations in the arbitration claim but might learn information outside the allegations that would lead it to withdraw from the

defense; (2) the alleged right to seek reimbursement of defense costs from the insured was a right that Continental Western reserves; and (3) Continental Western was prepared to pay all defense costs incurred by Robert Gray provided they were reasonable and necessary. Needs Dep. at 50:9–55:2.

## C. Continental Western Requested Information That Could Have No Bearing On Its Duty to Defend, Then Failed to Act Reasonably and Diligently to Obtain the Information, Apparently Thinking Its Appointed Defense Counsel Should Have Been Working for It on Coverage Issues.

Continental Western's next communication came on June 28, 2006 when Mr. Needs requested some specific documents and information from Robert Gray, suggesting Continental Western could not answer Mr. Chenoweth's June 21 email until it received the information. Ex. 116 at 1–2. In deposition, Needs could not identify any specific piece or type of information that would have allowed him to answer Mr. Chenoweth's questions. Needs Dep. at 71:17–72:4.

Mr. Chenoweth responded that much of the information was in his office and invited Continental Western to arrange for inspection and copying of the documents. Ex. 116 at 1. Mr. Chenoweth pointed out that the information sought by Needs was irrelevant to Continental Western's duty to defend and reservations of rights regarding the defense. *Id.* at 2.[2] CLG had previously faxed a letter to Needs on May 12, 2006 inviting Continental Western to inspect and copy documents informally produced to CLG by Newberg. Ex. 102 at 1.

When asked why Continental Western did not send someone to get the documents, Needs testified he had "assigned the claim to Jack Levy" and assumed Levy "would be getting the information[.]" Needs Dep. at 61:4–11. Needs admitted, however, that Continental Western

---

[2] Continental Western now apparently agrees with this in its briefing where it admits "the duty to defend is determined by comparing the terms of the insurance agreement with the allegations of the complaint" and "an insurer's knowledge of facts not alleged in the complaint is irrelevant." Def.'s Mem. at 5.

sought the information to determine whether there was a duty to defend and a duty to indemnify. *Id.* at 61:12–62:20.

On July 14, 2006 Mr. Chenoweth wrote, "It is regrettable that the carrier will not be candid with its insured regarding its coverage position" and that he was "more than a little puzzled over the lack of response[.]" Ex. 118. He expressed his understanding that Continental Western was reserving the alleged rights to: (1) "withdraw [from the defense] at any time for any reason" and (2) "charge the insured all defense costs incurred under [Continental Western's] control of the defense." *Id.* In Mr. Chenoweth's twelve years of insurance coverage litigation work he has increasingly seen insurers attempt to reserve these alleged rights. Chen. Opp. Dec. ¶ 6. He was particularly concerned about these issues at the time due to the vagueness of the allegations in Newberg's arbitration claim and Continental Western's failure to answer his questions. *Id.* Continental Western did not respond. Needs Dep. at 79:18–22, 80:15–81:19.

On July 31, 2006 CLG reiterated to Continental Western it would turn over the defense "upon Continental Western's clarification of its coverage position[.]" Ex. 119 at 2. According to Needs, Continental Western was "trying to get additional information," but Needs could not explain why, over a month after his request for documents, Continental Western still had not made arrangements to review or copy any of the documents in CLG's possession. Needs Dep. at 84:10–18, 85:10–15.

**D.      Continental Western Agrees That Reasonable and Necessary Post-Tender Defense Costs Should Be Covered, But Never Reviewed the Defense Cost Invoices Submitted by Robert Gray to Determine Whether Any of the Costs Were Properly Payable.**

In deposition, Needs testified that Continental Western's position as of June 21, 2006 was that it would pay all defense costs incurred by Robert Gray provided they were reasonable and necessary. Needs Dep. at 54:13–55:2. Continental Western further admits it sometimes pays the "fees incurred by the firm initially defending the claim from the date of tender up until defense

counsel is appointed." *Id.* at 88:21–25. In making this determination, it is Needs' practice to evaluate whether such fees are "reasonable and necessary." *Id.* at 89:11–17. On August 15, 2006 CLG sent a letter to Continental Western enclosing invoices for post-tender defense costs and requesting coverage for them. *Id.* at 86:14–87:4; Ex. 120. Yet Needs admits he never looked through the invoices to see whether any of the charges were properly payable. Needs Dep. at 87:1–9.

**E.    Continental Western Clarified It Was Reserving the Right to Reimbursement, Then Agreed to Waive That Right, But Still Failed and Refused to Pay Robert Gray's Post-Tender Defense Costs Incurred to CLG and Pinnell Busch.**

On August 21, 2007, having still received no clear acknowledgment of the duty to defend nor any response to the questions in Mr. Chenoweth's June 21 email, and having received no offer to pay any of Robert Gray's post-tender defense costs, Robert Gray filed this lawsuit against Continental Western for breach of the duty to defend. Docket No. 1. Prior to that time, Continental Western had no coverage counsel. Needs Dep. at 57:24–58:7.

In a letter dated September 29, 2006 Vincent Tomkiewicz introduced himself as coverage counsel for Continental Western, stating Continental Western would "not agree . . . to waive any right to seek reimbursement" from Robert Gray for defense costs. Ex. 124 at 3.[3] Tomkiewicz

///

---

[3]    In support of its motion for summary judgment, Continental Western repeatedly represents to the Court that its reservation of rights letter reserved only the "right to deny any ultimate indemnity obligation." *E.g.*, Def.'s Mem. at 2. This contention reveals a fundamental disconnect between Continental Western's motion and the facts of this case.

Continental Western further disingenuously characterizes Robert Gray's position in this lawsuit as "alleging that Continental Western breached its contract by reserving its right to deny an indemnity obligation." Def.'s Mem. at 2. As Continental Western is well aware, this lawsuit is not about its reservation of the right to deny indemnity coverage. This action is about Continental Western's improper failure and refusal to provide coverage for post-tender defense costs incurred by Robert Gray to the Chenoweth Law Group and Pinnell Busch. Docket No. 25, First Am. Compl. ¶¶ 12, 16–18.

stated Continental Western would pay defense costs "from May 8, 2006, when Robert Gray provided notice of the Newberg arbitration" but only those costs incurred to Smith Freed. *Id.*

In a letter from Tomkiewicz dated October 5, 2006, Continental Western agreed not to seek reimbursement from Robert Gray for any defense costs incurred during Continental Western's control of the defense. Ex. 12 at 2. Continental Western reiterated it would pay defense costs "from the tender of the lawsuit," but only those incurred by Smith Freed. *Id.* In spite of Continental Western's refusal to cover Robert Gray's post-tender defense costs incurred to CLG and Pinnell Busch, the defense was promptly transferred to Smith Freed, with CLG's full cooperation in the transition. Chen. Supp. Dec. ¶ 11.

Continental Western's refusal to even consider providing coverage for any of Robert Gray's post-tender defense costs incurred to CLG and Pinnell Busch is particularly ironic considering that the defense work of Robert Gray's lawyers at CLG caused no prejudice to the defense and proved instrumental in helping Continental Western settle Newberg's claim for $300,000 in damages for only $65,000 in indemnity coverage. Ex. I at 2; Chen. Opp. Dec. ¶ 7. Contrary to Continental Western's assertion that Robert Gray is using this lawsuit to seek "expenses associated with its own fee claim," Robert Gray is requesting payment of its post-tender defense costs incurred to CLG and Pinnell Busch because Continental Western has failed and refused to pay these costs. Docket No. 25, First Am. Compl. ¶¶ 12, 16–18.

## III.  RESPONSE ARGUMENT

**A.**   **The Court Should Draw All Factual Inferences in Favor of Robert Gray, Then Deny Continental Western's Motion If It Raises Any Triable Question of Material Fact That Cannot Be Decided as a Matter of Law.**

In considering Continental Western's motion, the Court should draw all factual inferences in favor of Robert Gray, then deny the motion if it raises any triable question of material fact that cannot be decided as a matter of law. At summary judgment, the non-movant's

evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). This means the non-movant's version of any disputed fact is presumed correct. *See id.* (affirming Ninth Circuit's reinstatement of all claims following trial court's dismissal of claims at summary judgment). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If a genuine issue of fact exists, summary judgment is unavailable on that issue. *Id.* at 247–48.

**B.      In the Very Least, Continental Western's Motion Raises Questions of Fact That Preclude Summary Judgment.**

Continental Western argues it is entitled to summary judgment because: (1) upon tender of the arbitration claim, Continental Western "promptly . . . agreed to and provided a defense to Robert Gray"; (2) Continental Western "reserved its right to deny coverage for claims against Robert Gray that did not come within the policy or were excluded"; and (3) Continental Western "paid for all of the attorneys' fees, costs and expenses incurred in the defense." The summary judgment record before the Court refutes each of these flawed premises.

When Continental Western issued its reservation of rights letter and attempted to appoint defense counsel it admittedly "hadn't made a clear determination on the duty to defend[.]" Needs Dep. at 48:4–7. The proffered defense would have required Robert Gray to accept Continental Western's "full reservation of rights," including the alleged right to seek reimbursement from Robert Gray for defense costs incurred during Continental Western's control of the defense and "the right to decline any future defense and/or indemnity payments under your policy for the allegations presented." Ex. 124 at 3; Needs Dep. at 50:9–55:2; Ex. C at

5.  When Robert Gray asked Continental Western to cover its reasonable post-tender defense costs, Continental Western failed and then unequivocally refused to pay any of them.  Needs Dep. at 87:1–9; Ex. 124 at 3; Ex. 12 at 2.  In the very least, Continental Western's motion raises questions of fact for the jury.  Continental Western is not entitled to summary judgment and its motion should be denied.

**C.  As a Matter of Law, Continental Western Had a Duty to Defend Robert Gray Against the Newberg Arbitration.**

Nowhere in Continental Western's motion for summary judgment does Continental Western deny that it had a contractual duty to defend.  Robert Gray has moved for partial summary judgment on this issue.  Robert Gray hereby incorporates its prior briefing on the issue into this Response.

Misinterpreting the case law, Continental Western incorrectly asserts there is no duty to defend "unless the complaint alleges conduct that could be covered."  *See* Def's Mem. at 5 (citing *Abrams v. Gen. Star Indem. Co.*, 67 P.2d 931 (Or. 2003); *McKee v. Allstate Ins. Co.*, 426 P.2d 456 (Or. 1967)).  Numerous courts, including this District Court, have clarified that "a duty to defend exists whenever the factual allegations in the complaint would permit the presentation of evidence at trial of an activity covered by the policy."  *E.g.*, *Fireman's Fund Ins. Co. v. Ed Niemi Oil Co.* ("*Niemi*"), 2005 U.S. Dist. LEXIS 29467, at *4 (D. Or. 2005) (citing *Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London*, 104 P.3d 1162, 1169 (Or. App. 2005)).  This means there is a duty to defend unless "the allegations in the underlying complaint state a claim for excluded conduct only."  *Allstate Ins. Co. v. Fulmer*, 2004 U.S. Dist. LEXIS 24421, at *8 (D. Or. 2004) (citing *Abrams*, 67 P.3d at 935).

Disregarding the allegations in the *First Amended Complaint*, Continental Western suggests that Robert Gray seeks coverage under the wrong policy.  Def.'s Mem. at 9.  Robert Gray's claim is not limited to the 2005–06 policy because Paragraph 3 of the *First Amended*

*Complaint* alleges Continental Western provided insurance "[f]rom at least April 18, 2003 to April 18, 2006." Docket No. 25. Moreover, Continental Western admits it appeared from the face of the arbitration claim that the date of loss fell within one of Robert Gray's policy periods. Needs Dep. at 38:5–10; Ex. 107 at 5.

Continental Western cites *Oak Crest Construction Co. v. Austin Mutual Insurance Co.*, 998 P.2d 1254 (Or. 2000), for the proposition that, based on Newberg's allegations of untimely and non-performance, the Newberg claim was not likely a covered claim. Def.'s Mem. at 6–7. *Oak Crest*, however, involved only the duty to indemnify and not the duty to defend. *Oak Crest*, 998 P.2d at 1254. The duty to defend requires only the mere *possibility* that the allegations could give rise to a covered liability. *Niemi*, 2005 U.S. Dist. LEXIS 29467, at *3. Newberg's allegations created this possibility. *Oak Crest* is completely inapposite.

As explained in Robert Gray's *Memorandum in Support of Plaintiff's Motion for Summary Judgment* ("Pl.'s Mem."), the allegations in Newberg's arbitration claim would not have prevented Newberg from introducing evidence at trial of conduct giving rise to damages covered by the policy. Pl.'s Mem. at 11. The allegations do not state a claim for excluded conduct only and reveal the possibility that the policies might provide coverage. Therefore, the Court should find that Continental Western had a duty to defend Robert Gray against the Newberg arbitration claim.

**D.     As a Matter of Law, Continental Western's Duty to Defend Began on the Date of Tender, May 8, 2006.**

Continental Western does not deny, in support of its motion, that its duty to defend began on the date of tender. Indeed, Continental Western effectively admits this is true because twice it wrote to Robert Gray that it would pay defense costs incurred from the date of tender, May 8, 2006 — though only those defense costs incurred to Smith Freed. Exs. 12 at 2, 124 at 3. Robert

Gray has already moved for partial summary judgment on this issue, and hereby incorporates its prior briefing into this Response.

Upon tender of the claim, the insurer has everything it needs to determine its duty to defend. *See Ledford v. Gutoski*, 877 P.2d 80 (Or. 1994) ("whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy"). If the duty to defend did not begin on the date of tender, an insurer would have no reason to respond promptly to tender of a claim for liability. The insurer could remain silent, forcing the insured to defend itself, then appoint defense counsel at the last minute while claiming to have done its duty and denying coverage for the insured's post-tender defense costs. The Court should avoid this absurdity and apply Oregon law to find that Continental Western's duty to defend began on the date of tender, May 8, 2006. *Oregon Ins. Guar. Assoc. v. Thompson* ("*Thompson*"), 760 P.2d 890, 893 (Or. App. 1988) (holding "[n]otice of the claim is a condition precedent to the duty to defend"); cited in *Wausau Bus. Ins. Co. v. Puget Plastics Corp.*, 2006 U.S. Dist. LEXIS 45014, *5 (D. Or. 2006) (identifying *Thompson* as the "leading" Oregon case addressing *when* an insurer's duty to defend is triggered).

**E.     Continental Western's Motion Should Be Denied Because It Is Indisputably in Breach of the Insurance Contract for Failing and Refusing to Pay Robert Gray's Reasonable Defense Costs Incurred During the Waiting Period Between Tender of the Claim and Receipt of Continental Western's First Response Letter on June 14, 2006.**

Robert Gray has moved for summary judgment to hold Continental Western in breach of the insurance contract for failing and refusing to pay Robert Gray's reasonable defense costs incurred during the waiting period between tender of the claim and receipt of Continental Western's first response letter on June 14, 2006. Pl.'s Mem. at 15–16. Robert Gray hereby incorporates its prior briefing on this issue into this Response.

Continental Western conceded that its position as of June 21, 2006 was that it would pay all defense costs incurred by Robert Gray provided they were reasonable and necessary. Needs Dep. at 54:13–55:2. Continental Western further admits it sometimes pays the "fees incurred by the firm initially defending the claim from the date of tender up until defense counsel is appointed." *Id.* at 88:21–25. Continental Western's summary judgment brief, however, fails to explain how Continental Western can escape coverage for these fees. Continental Western would prefer to lump the entire post-tender period into one category of disputed costs. The Court should not entertain this blurring of the facts.

Continental Western supports its motion by arguing Robert Gray "thwarted" Continental Western's efforts to provide defense coverage and "imposed improper conditions on the defense." Def.'s Mem. at 2. These specious excuses cannot apply to any of the defense costs incurred by Robert Gray during the waiting period between tender on May 8, 2006 and receipt of Continental Western's first response letter on June 14, 2006. Prior to June 14, 2006, Continental Western had issued no reservation of rights letter or notice of the appointment of defense counsel. It was entirely possible that Continental Western would deny coverage and refuse to provide any type of defense.

Until June 14, 2006, Robert Gray had no reasonable choice but to defend itself.[4] It could not sit idly by while Newberg pursued its claim for $300,000 in damages. Continental Western's failure and refusal to pay Robert Gray's defense costs incurred during the waiting period between May 8, 2006 and receipt of Continental Western's first response letter on June 14, 2006

///

---

[4] Notably, some courts have *required* an insured to protect its interests by defending itself through independent counsel when an insurer is not providing a defense. *E.g.*, *La Rotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 936 (Ill. App. 1980) (holding the insured had a "duty to act reasonably and in good faith, to make the best of the situation"); *Gordon v. Nationwide Mut. Ins. Co.*, 285 N.E.2d 849, 853, 855 (N.Y. 1972) (holding insured's failure to defend himself precluded part of his claim).

indisputably constitutes breach of the insurance contract and warrants denial of Continental Western's motion for summary judgment.

**F.      Continental Western's Motion Should Be Denied for the Additional Reason That Its Failure and Refusal to Pay Robert Gray's Reasonable Defense Costs Incurred to CLG and Pinnell Busch after June 14, 2006 Constitutes Further Breach of Its Duty to Defend.**

Continental Western has plainly failed and refused to pay Robert Gray's reasonable defense costs incurred to CLG and Pinnell Busch after June 14, 2006, constituting further breach of its duty to defend.  This breach also cannot be excused by Robert Gray's alleged non-cooperation nor any other condition of forfeiture in the policies because: (1) Robert Gray caused no prejudice; (2) Robert Gray acted reasonably; and (3) Continental Western did not act with diligence and good faith in seeking Robert Gray's cooperation and attempting to take control of the defense.  These are questions of fact.

Many insurers have attempted to excuse a breach by complaining of an insured's alleged misconduct on the grounds of "refusal to assist," "non-cooperation," or "payment without consent."  These are condition of forfeiture defenses,[5] which require the insurer to prove the insured's conduct was both prejudicial to the insurer *and* unreasonable under the circumstances. *See, e.g.*, *Lusch v. Aetna Cas. & Surety Co.*, 538 P.2d 902, 904–06 (Or. 1975).  The duty of cooperation is a "reciprocal duty" so it raises an additional element: whether the insurer acted with good faith and diligence in dealing with the insured and obtaining its cooperation.  *Bailey v. Universal Underwriters Ins. Co.*, 474 P.2d 746, 754–57 (Or. 1970).

*///*

---

[5]  A condition of forfeiture is a condition "where there is insurance coverage for loss in the first place, but acts of the insured, such as filing of false statements of loss, nullify the coverage." *Farmers Ins. Co. of Or. v. Munson*, 873 P.2d 370, 373 (Or. App. 1994) (quotation omitted).

**1.** ***Robert Gray's Decision Not to Communicate with Smith Freed Regarding Its Defense Prior to October 6, 2007 Was Not Prejudicial to the Defense.***

Continental Western's motion for summary judgment fails to discuss or even attempt to establish the type of prejudice required by its condition of forfeiture defense. In this context, the element of prejudice demands proof that the insured's conduct caused the underlying case to result in "a judgment which was in whole or in part wrong." *Bailey*, 474 P.2d at 755 (finding such prejudice where insured's failure to appear in the underlying lawsuit resulted in entry of a default judgment against the insurer) (quotation omitted); *Johnson v. Doughty*, 385 P.2d 760, 762 (Or. 1963) (finding no prejudice from insurer's failure to give notice of claim where insurer received notice from other sources and was able to defend the claim). Here, the evidence shows that the defense work of Robert Gray's lawyers at CLG caused no prejudice to the defense and proved instrumental in helping Continental Western settle a $300,000 claim for only $65,000 in indemnity coverage. Ex. I at 2; Chen. Opp. Dec. ¶ 7. There is no evidence that any prejudice resulted from Robert Gray's decision not to communicate with Smith Freed regarding its defense prior to October 6, 2007.

**2.** ***Robert Gray Acted Reasonably Under the Circumstances.***

The evidence at summary judgment shows that Robert Gray acted reasonably in refusing to communicate with Smith Freed regarding its defense prior to October 6, 2007, and nothing in Continental Western's motion refutes this.

According to Continental Western, "there is no prohibition against reserving the right to withdraw." Def.'s Mem. at 10 (discussing *United Pac. Ins. v. Pac. Nw. Research Found.*, 593 P.2d 1278 (Or. App. 1979)). Indeed, *United Pacific* clearly explains that an insurer can withdraw from the defense *only* if it specifically reserves the right to do so. *Id.* at 1280. If it fails to reserve the right, it can withdraw only if there is no risk of prejudice to the insured. *Id.* If the insurer reserves the right to withdraw under certain circumstances, it cannot withdraw

absent those circumstances. *Id.* These rules from *United Pacific* underscore the reasonableness of Robert Gray's request for Continental Western to clarify whether it was reserving the right to withdraw at any time and for any reason. Without knowing Continental Western's position on the issue, Robert Gray did not know what its rights would be with respect to the proferred defense. In addition, *United Pacific* justifies Robert Gray's concern that it might have expended its time and resources educating Smith Freed about the case only to have Continental Western later withdraw, which would have forced Robert Gray to unnecessarily expend additional resources to get its own counsel back up to speed. Tell. Dec. ¶ 8.

Continental Western suggests Robert Gray acted unreasonably as a matter of law because an "insurer that agrees to defend has the right to control the defense of the litigation without conditions by the insured." Def.'s Mem. at 7 (citing *Gebrayel v. Transamerica Title Ins. Co.*, 888 P.2d 83 (Or. App. 1995); *Ferguson v. Birmingham Fire Ins. Co.*, 460 P.2d 342 (Or. 1969); *Maine Bonding & Cas. Co. v. Centennial Ins. Co.*, 693 P.2d 1296 (Or. 1985)). The cited cases, however, either do not support the stated proposition or actually support denial of Continental Western's motion.

In *Gebrayel*, the insurer denied coverage and completely refused to defend. *Gebrayel*, 888 P.2d at 86. There was no discussion of any "conditions" imposed by the insured. *See generally*, *Gebrayel*, 888 P.2d 83. Similarly, *Maine Bonding* did not discuss any "conditions" imposed by the insured. *See generally*, 693 P.2d 1296. The case involved an excess insurer's claim that wrongful acts by the primary insurer in investigating and defending the insured had increased the excess insurer's liability. *Id.* at 1297.

In *Ferguson*, the insured insisted the insurer could control the defense only if it waived the right to later litigate its duty to indemnify. 460 P.2d at 349. The Oregon Supreme Court held this was an "unreasonable condition" but not one that would exonerate the insurer from liability if there was coverage because the insured was acting in accordance with a rule that had been

adopted by other courts. *Id.* *Ferguson* therefore supports denial of Continental Western's motion because it clarified that an insurer will not be exonerated from its defense obligation even if the insured imposes an unreasonable condition on the defense, so long as the insured is acting in accordance with a rule adopted by other courts.

Here, the only condition imposed by Robert Gray was that Continental Western waive its alleged right to reimbursement of defense costs incurred during its control of the defense. Robert Gray's objection to this alleged right and refusal to accept Continental Western's appointed defense counsel subject to that alleged right was reasonable under the circumstances because the alleged right to reimbursement was not provided by the insurance policies nor by Oregon law. In addition, Robert Gray's approach was consistent with rules adopted by other courts.

In general, there is "a split among states as to whether an insurer may ever seek reimbursement for defense costs based on a unilateral reservation of rights letter." *Am. Motorist Ins. Co. v. Custom Rubber Extrusions, Inc.*, 2006 U.S. Dist. LEXIS 59436, at *11–15 (N.D. Ohio 2006). Some courts hold an insurer has no right to recoup defense costs from an insured unless the insurance contract expressly provides that right. *E.g.*, *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1101–02 (Ill. 2005) (quotation omitted); *Employers Mut. Cas. Co. v. Indus. Rubber Prods., Inc.*, 2006 U.S. Dist. LEXIS 9242, at *15–16 (D. Minn. 2006) (finding "an insurer is not entitled to the reimbursement of defense costs expended prior to the determination of coverage, unless specifically provided for in the insurance policy"). "Most states," however, "permit insurers to seek reimbursement pursuant to a unilateral reservation of rights based on the theory that the reservation creates an implied-in-fact contract when it is accepted by the insured without objection." *Am. Motorist Ins. Co.*, 2006 U.S. Dist. LEXIS 59436, at *15. Hence, in some states, "unilateral conduct of the insurer can give rise to a right of reimbursement" such that "even where a policy is silent on reimbursement, a quasi-contractual agreement to reimburse may be implied in law." *St. Paul Fire & Marine Ins. Co. v. Compaq*

*Computer Corp.*, 377 F.Supp.2d 719, 724 (D. Minn. 2005) (explaining Texas rule). In other states, a right to reimbursement from the insured exists "where the insurer specifically reserved the right and the insured did not object." *Id.* at 723; *see also Buss v. Superior Court*, 939 P.2d 766, 776–78 (Cal. 1997); *Knapp v. Commonwealth Land Title Ins. Co.*, 932 F.Supp. 1169, 1172 (D. Minn. 1996).

Against this backdrop of conflicting rules from other jurisdictions, Robert Gray reasonably requested clarification of Continental Western's coverage position, a request that Continental Western admits was reasonable. Needs Dep. at 29:18–30:20. Robert Gray was concerned that Continental Western would withdraw from the defense and seek reimbursement for defense costs incurred during its control of the defense to attorneys and consultants not of Robert Gray's choosing. Tell. Dec. ¶ 8. If Robert Gray had blindly accepted Smith Freed's representation pursuant to Continental Western's "full reservation of rights," Robert Gray might have inadvertently waived any defense against a subsequent claim for reimbursement by Continental Western.

Moreover, as the Arizona Court of Appeals has observed: "Obviously, any insurance company or an attorney employed by an insurance company who undertakes to represent an insured under a reservation of the right to subsequently seek reimbursement from the insured for any losses arising out of that representation has a 'conflict of interest' with that insured." *Fulton v. Woodford*, 545 P.2d 979, 982 (Ariz. App. 1976). Robert Gray was understandably wary of accepting a defense saddled with such a conflict of interest.

Ignoring this obvious conflict, Continental Western invokes Oregon's "tri-partite relationship" attempting to show that Robert Gray could have openly shared confidential information with Smith Freed without waiving any privilege. Def.'s Mem. at 11. Although Oregon Rule of Professional Conduct 1.6 prevents insurance defense counsel from disclosing to the insurer any "information relating to the representation of a client" without the client's

consent, this protection obviously does not apply to other lawyers and employees working for an insurance company who are not bound by the special duties associated with defense of the insured. Therefore, until the insured receives a clear acknowledgment of the duty to defend from its insurer, the insured should continue defending itself. Without such an acknowledgment, there is no tri-partite relationship and any information disclosed to the insurer's lawyer would arguably be discoverable by the insured's opponent in the underlying case. These risks are particularly salient here where Continental Western directed Smith Freed, its supposed defense counsel, to take the deposition of Robert Gray, and expected Smith Freed to help investigate whether it had a duty to defend.

> **3.** **Robert Gray's Refusal to Communicate with Smith Freed Regarding its Defense Prior to October 6, 2007 Cannot Excuse Continental Western's Breach Because Continental Western Did Not Act with Good Faith and Due Diligence in Dealing with Robert Gray and Attempting to Take Control of the Defense.**

As Oregon Courts have explained, the duty of cooperation is a <u>reciprocal</u> duty that requires an insurer to act with "reasonable diligence and good faith." *Grant*, 693 P.2d 1328, 1329–30; *Bailey*, 474 P.2d at 756; *Johnson*, 385 P.2d at 762–63. In *Johnson* the court rejected the insurer's non-cooperation defense because the insurer failed to take action necessary to obtained the insured's cooperation. *Id.* In *Grant*, the Oregon Court of Appeals reversed the trial court's decision to grant summary judgment because, even though the insured had failed to produce documents required in the underlying litigation, the insurer did not introduce sufficient evidence of diligence and good faith to take the issue away from the jury. 693 P.2d at 1330.

A similar problem plagues Continental Western's motion for summary judgment. Continental Western criticizes Robert Gray for protecting itself by asking reasonable questions about Continental Western's coverage position, but the evidence shows Continental Western

///

failed to act with reasonable diligence and good faith in dealing with Robert Gray and attempting to take control of the defense.

Before ever notifying Robert Gray of its intent to take control of the defense, Continental Western directed its supposed defense counsel to depose Robert Gray. Ex. D at 2. Continental Western sent its reservation of rights letter directly to Robert Gray without copying Robert Gray's attorneys, even though it knew Robert Gray was represented by counsel. Needs Dep. at 40:22–41:10; Tell. Dec. ¶ 7. Continental Western invited Robert Gray to respond "immediately" if it had any questions, Ex. C at 6, but when it received five simple questions from CLG it failed to answer them. Ex. 114 at 2; Ex. 114 at 1; Ex. 115 at 1; Chen. Opp. Dec. ¶ 5.

On June 28, 2006 Continental Western requested some specific documents and information from Robert Gray. Ex. D at 2; Needs Dep. at 26:2–4. Mr. Chenoweth responded that much of the information was in his office and invited Continental Western to arrange for inspection and copying of the documents. Ex. 116 at 1. When asked why Continental Western did not send someone to get the documents, Needs testified he had "assigned the claim to Jack Levy" and assumed Levy "would be getting the information[.]" Needs Dep. at 61:4–11. Needs admitted, however, that Continental Western sought the information to help with its coverage determinations. *Id.* at 61:12–62:20.

On July 28, 2006, Mr. Chenoweth expressed his understanding that Continental Western was reserving the alleged rights to: (1) "withdraw [from the defense] at any time and for any reason and (2) "charge the insured all defense costs incurred under [Continental Western's] control of the defense." Ex. 118. Continental Western did not respond. Needs Dep. at 79:18–22, 80:15–81:19. On July 31, 2006 CLG reiterated to Continental Western it would turn over the defense "upon Continental Western's clarification of its coverage position[.]" Ex. 119 at 2. According to Needs, Continental Western was "trying to get additional information," but Needs could not explain why, a month after requesting the documents, Continental Western still had not

///

Page 19 - **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
By Plaintiff Robert Gray Partners, Inc.

made arrangements to review or copy any of the documents in CLG's possession. Needs Dep. at 84:10–18, 85:10–15.

On August 15, 2006 CLG sent a letter to Continental Western enclosing invoices for post-tender defense costs and requesting coverage for them. Needs Dep. at 86:14–87:4; Ex. 120. In deposition, Needs testified that Continental Western's position as of June 21, 2006 was that it would pay all defense costs incurred by Robert Gray provided they were reasonable and necessary. Needs Dep. at 54:13–55:2. Continental Western further admits it sometimes pays the "fees incurred by the firm initially defending the claim from the date of tender up until defense counsel is appointed." *Id.* at 88:21–25. It is Needs' practice to evaluate whether such fees were "reasonable and necessary." *Id.* at 89:11–17. Yet Needs admits he never looked through the invoices to see whether any of the charges were properly payable. *Id.* at 87:1–9.

On August 21, 2007, having still received no clear acknowledgment of the duty to defend nor any response to the questions in Mr. Chenoweth's June 21 email, and having received no offer to pay any of Robert Gray's post-tender defense costs, Robert Gray filed this lawsuit against Continental Western for breach of the duty to defend. Docket No. 1. Prior to that time, Continental Western had no coverage counsel. Needs Dep. at 57:24–58:7.

In a letter dated September 29, 2006 Vincent Tomkiewicz introduced himself as coverage counsel for Continental Western, stating Continental Western would "not agree . . . to waive any right to seek reimbursement" from Robert Gray for defense costs. Ex. 124 at 3. Tomkiewicz stated Continental Western would pay defense costs "from May 8, 2006, when Robert Gray provided notice of the Newberg arbitration" but only those costs incurred to Smith Freed. *Id.*

In a letter from Tomkiewicz dated October 5, 2006, Continental Western finally reversed its position and agreed not to seek reimbursement from Robert Gray for any defense costs incurred during Continental Western's control of the defense. Ex. 12 at 2. Continental Western reiterated it would pay defense costs "from the tender of the lawsuit," but only those incurred by

Smith Freed.  *Id.*  In spite of Continental Western's refusal to cover Robert Gray's post-tender defense costs incurred to CLG and Pinnell Busch, the defense was promptly transferred to Smith Freed, with CLG's full cooperation in the transition.  Chen. Supp. Dec. ¶ 11.

Continental Western has not attempted to show that it acted with reasonable diligence and good faith in dealing with Robert Gray and attempting to take control of the defense because on these facts it cannot possibly do so.  In violation of Circuit Rule 36–3(c), Continental Western attempts to find support for its motion in an unpublished case, *Two Bears Co. v. American State Insurance Co.*, 1999 U.S. App. LEXIS 10912 (9th Cir. 1999).  *See* Def.'s Mem. at 2 (arguing Continental Western had the "absolute right" to control the defense).  Even if this were a permissible citation, *Two Bears* would not support Continental Western's motion.  *Two Bears* simply affirmed the holding from *Ferguson* that an insurer's reservation of the right to litigate its *indemnity obligation* did not give the insured the right to insist on its choice of counsel.  *Two Bears*, 1999 U.S. App. LEXIS 10912, at *3–5.  *Two Bears* says nothing about the alleged right to reimbursement asserted by Continental Western in this case.

The same is true of Continental Western's citation to *Georgetown Realty, Inc. v. Home Ins. Co.*, 831 P.2d 7 (Or. 1992).  *See* Def.'s Mem. at 7–8.  Like *Two Bears*, *Georgetown* did not discuss any alleged right to reimbursement.  *Georgetown*, in fact, was not even a case about control of the defense.  *Georgetown* held that a liability insurer has a fiduciary obligation to the insured in all matters regarding the insured's defense.  831 P.2d at 14.  If anything, *Georgetown* highlights the fact that Continental Western's failure to answer Robert Gray's reasonable questions about the terms of the proffered defense constitutes a breach of Continental Western's duties as defense insurer.

///

///

///

**G.** **The Court Should Reject as Premature Continental Western's Motion to Dismiss Robert Gray's Claims for Attorney Fees Under ORS 742.061 and Prejudgment Interest Under ORS 82.010.**

Because questions of fact preclude Continental Western's motion for summary judgment, it would be premature to dismiss Robert Gray's claims for attorney fees under ORS 742.061 and prejudgment interest under ORS 82.010(1). In the event that Robert Gray obtains a judgment against Continental Western Robert Gray will submit these claims for the Court's consideration.

## IV. CONCLUSION

For the foregoing reasons, Robert Gray respectfully requests that the Court deny Continental Western's motion for summary judgment in its entirety.

DATED this 10th day of September, 2007.

CHENOWETH LAW GROUP, PC


s/ Brooks M. Foster
BROOKS M. FOSTER, OSB #04287
Telephone: (503) 221-7958
Of Attorneys for Plaintiff